UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>  v.<br><br>D & R EXCAVATING, INC., a Washington corporation; DOUGLAS D. HOFFMAN and SUSAN K. HOFFMAN, and the marital community composed thereof; CPM DEVELOPMENT CORP. dba ICON MATERIALS, a Washington corporation; and KING COUNTY, a political subdivision of the State of Washington,<br><br>       Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

## I. **INTRODUCTION**

In this action, The Ohio Casualty Insurance Company ("Ohio Casualty") seeks declaratory relief regarding its obligations with respect to a pending state court action, *King County v. CPM Development Corp. dba ICON Materials v. D & R Excavating, Inc. et al*, Washington State Superior Court, King County, Case No. 19-2-22896-2 SEA (the "Underlying Action").

## II. PARTIES

1.      Plaintiff Ohio Casualty is a company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkley St., Boston, MA 02116.

2.      Based on information and belief, defendant D & R Excavating, Inc. ("D&R Excavating") is a Washington corporation domiciled in Washington and located at 8820 SW Cemetery Rd, Vashon, WA 98070.

3.      Based on information and belief, defendants Douglas D. Hoffman and Susan K. Hoffman (collectively, "Hoffman") are a married couple residing and domiciled in the State of Washington.  Hoffman and D&R Excavating and collectively referred to as "D & R."

4.      Based on information and belief, defendant CPM Development Corp. dba ICON Materials ("ICON") is a Washington corporation domiciled in Washington and located at 1508 Valentine Avenue SE, Pacific, WA 98047-2103.

5.      Defendant King County is a political subdivision of the State of Washington.

## III. JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the plaintiff is a citizen of different states than all defendants.

7.      Venue is proper pursuant to 28 U.S.C. § 1339(b)(1) & (2) because all defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## IV. FACTS

A.      **The Ohio Casualty Policies**

8.      Ohio Casualty issued two policies of insurance to D&R Excavating.

9.      Ohio Casualty issued Policy No. BKO (19) 57 61 62 62 to D&R Excavating for a policy period incepting on January 27, 2018, and ending on January 27, 2019 (the "CGL

Policy"). A true and correct copy of the CGL Policy is attached as Exhibit "A".

10. Ohio Casualty issued Policy No. USO (19) 57 61 62 62 to D&R Excavating for a policy period incepting on January 27, 2018, and ending on January 27, 2019 (the "Umbrella Policy"). A true and correct copy of the Umbrella Policy is attached as Exhibit "B".

**B. The Underlying Action**

11. This declaratory judgment action involves a dispute as to liability insurance coverage for claims asserted against the parties in the Underlying Action.

12. Specifically, King County alleges that on May 15, 2018, it entered into a contract with ICON for the 2018 Vashon Island Highway SW Pavement Preservation Project on Vashon Island (the "Project") that incorporated the Washington State Department of Transportation ("WSDOT") 2018 Standard Specifications for Road, Bridge, and Municipal Construction as well as other special provisions.

13. In turn, ICON entered into a subcontract with D&R Excavating to, among other things, haul and dispose of asphalt millings on the Project (the "Subcontract"). The Subcontract required that D&R perform its work in accordance with the requirements of the Contract.

14. Based on D&R Excavating's performance of the Project and its obligations under the Subcontract, ICON claimed D & R was in breach of the Subcontract, and King County, in turn, claimed ICON was in breach of the Contract. King County also asserted a claim of nuisance per se against D & R.

15. In the Underlying Action, the trial court entered several findings of fact and conclusions of law on March 19, 2021. The trial court's order dated March 19, 2021, is attached hereto as Exhibit "C." Specifically, the trial court found that:

15.1 The Subcontract obligated D&R Excavating to haul and dispose of millings on the project.

COMPLAINT FOR DECLARATORY JUDGMENT NO.

PAGE 3

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

15.2    The Subcontract required D&R Excavating to perform all duties and obligations of ICON under the Contract to the extent that such duties and obligations were related, directly or indirectly to D&R Excavating's work.

15.3    The Subcontract stated that D&R Excavating was solely responsible for all laws, ordinances, regulations, and governmental requirements applicable to its work, including the proper removal and disposal of materials.

15.4    The Subcontract required D&R Excavating to at all times comply with all applicable local, state and federal laws, rules, and regulations and ordinances for matters affecting the environment.

15.5    The Subcontract required D&R Excavating to procure and pay for all permits, licenses and inspections required by any governmental authority for its work.

15.6    The Contract, incorporated into the Subcontract, required that all millings temporarily stockpiled at the Melita Pit be removed within 30 days of Substantial Completion of ICON's work.

15.7    The Subcontract contained indemnification provisions under which D&R Excavating agreed to defend, indemnify and hold ICON harmless against all claims arising from or relating in any manner directly or indirectly from or connected with D&R Excavating's work and that in the event the Owner or ICON deem D&R Excavating's work improper and D&R Excavating fails to remedy the improper work, D&R is liable for and shall pay ICON for all costs, damages, losses, attorneys' fees, etc. incurred by ICON as a result.

15.8    The terms of the Subcontract stated that ICON is entitled to attorneys' fees and costs should ICON require the services of an attorney in order to give effect to any of the provisions of the Subcontract, or to prepare any amendments or modifications thereto which are occasioned by D&R

Excavating's failure to comply with the Subcontract.

15.9    D&R Excavating stockpiled, disposed and/or placed millings at various properties on Vashon Island, including at the Melita Pit.

15.10   King County had alleged that D&R Excavating's stockpiling, disposal, and/or placement of millings was in breach of the standard specifications incorporated into the Contract and in violation of King County Code.

15.11   ICON provided numerous demands to D&R Excavating to remove the millings King County asserted were improperly located, stored, and placed on Vashon Island, including but not limited to the millings at the Melita Pit, but D&R Excavating refused to remove the millings at issue.

15.12   Based on D&R Excavating's failure to remove the millings at the Melita Pit and cure its default, ICON terminated D&R Excavating's Subcontract.

15.13   At King County's direction, ICON incurred costs, damages, attorneys' fees, and other expenses removing millings from Vashon Island hauled by D&R Excavating.

15.14   As of March 2021, additional millings hauled by D&R Excavating remained on Vashon Island, including at property owned by Douglas and Susan Hoffman, but ICON did not have permission to enter those properties.

15.15   King County had filed an enforcement action and suit against ICON for breach of contract alleging improper removal and disposal of millings on the project in violation of the Contract and King County Code.

15.16   And, ICON, in turn, filed a third-party complaint against D & R for breach of contract and indemnification under the Subcontract.

15.17   D & R's failure to defend, indemnify, and hold ICON harmless constituted a breach of the Subcontract.

15.18   If ICON was found liable to King County at trial for breach of contract regarding improper removal and disposal of millings in violation of the Contract and King County Code, D&R Excavating would be equally liable to ICON for breach of the Subcontract.

15.19   D&R Excavating was contractually required to indemnify, defend, and hold harmless ICON against the King County claims and directives related to D&R Excavating's work, including but not limited to D&R Excavating's failure to remove the millings as directed by King County and ICON, King County's Code Enforcement Actions related to D&R Excavating's work, and the Underlying Action.

16.   The Underlying Action went to trial on September 27, 2021.  Trial concluded on October 12, 2021.  At trial, the parties' claims consisted of:

16.1   King County's claim for nuisance per se against D & R;

16.2   ICON's claim against D & R for breach of contract for failure to complete its work and failure to defend, indemnify, and hold ICON harmless, as to D & R's work; and

16.3   D & R's claim against King County for tortious interference with business expectancy.

17.   On October 14, 2021, the jury returned a verdict in the Underlying Action.  The jury's verdict is attached as Exhibit "D."  The jury's verdict found as follows:

17.1   Did D & R and/or the Hoffmanns violate KCC 16.82.100A.4.d (prohibiting placement of Recycled Asphalt Pavement ("RAP") on properties on Vashon Island)?   YES

17.2   Did D & R and/or the Hoffmans' violation of KCC 16.82.100A.4d (prohibiting placement of RAP on properties on Vashon Island) cause King County damages?   YES

COMPLAINT FOR DECLARATORY JUDGMENT NO.

PAGE 6

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

17.3     What do you find to be the total amount of King County's damages caused by D&R and/or the Hoffmans' violation of KCC 16.82.100A.4.d (prohibiting placement of RAP on properties on Vashon Island)? <u>We the jury award damages in the amount of $12,571.52 to King County.</u>

17.4     The Court has previously determined that D&R breached its subcontract with ICON for failing to defend, indemnify, and hold ICON harmless. The amount of damages, if any, to be determined at trial [sic]. <u>We the Jury award damages in the amount of $683,764.81 to ICON Materials for D & R's breach.</u>

17.5     The jury found against D & R with respect to its counterclaims against King County and ICON.

18.     Based on information and belief, with respect to the damages award to King County in the amount of $12,571.52, these damages arose from hourly cost to King County personnel to conduct code enforcement investigations and the processing of permit applications with respect to removal of RAP from the various properties on which D & R was alleged to have placed the same. King County alleged its code enforcement investigations would require 1 to 2 hours for each of the 26 parcels at issue on Vashon Island. At $51.68 / hr to King County investigators, King County sought damages in the amount of $1,343.68 to $2,687.36. Additionally, King County alleged that site development specialists would require between 4 and 10 hours to process clearing and grading permit applications for the removal and relocation of RAP from the 26 parcels at issue on Vashon Island. At $58 / hr to King County specialists, King County sought additional damages in the amount of $6,032 to $15,080, for a total requested award of $7,375.68 to $17,767.36.

19.     Based on information and belief, with respect to the damages awarded to ICON in the amount of $683,764.81, the basis and accounting for the jury's award was contained at ICON's Trial Exhibit No. 388. Specifically, the jury awarded ICON's requested damages for

COMPLAINT FOR DECLARATORY JUDGMENT NO.

PAGE 7

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

its costs in removing and relocating RAP from at least three locations on Vashon Island, including:

> 19.1   King County Melita DLS Melita Pit, 7717 SW 248th St, Vashon, WA 98070;
>
> 19.2   Misty Island Farms, 11819 SW 220th, Vashon, WA 98070; and
>
> 19.3   Williams Holding Property, 18429 Vashon Hwy SW, Vashon, WA 98070.

20.   For each of these three locations, ICON itemized its costs related to the labor and equipment to remove RAP previously placed by D & R, replacement material, ferry tolls to transport the RAP off of Vashon Island, and consulting and subcontractor costs.  ICON also itemized ferry tolls and consulting costs for "Millings Mitigation – Driveways" and labor costs for "Misc Costs for Millings on Vashon."

21.   After trial, the parties filed various cross-motions related to the jury's verdict, which the court ruled on December 15, 2021.  The Court's Order dated December 15, 2021, Granting ICON's Motion for Attorneys' Fees and Costs is attached as Exhibit "E."  The Court's Judgment and Order on Jury Verdict Entry of Final Judgment, dated December 15, 2021, is attached as Exhibit "F."  The Court's Judgment in Favor of ICON Against D & R is attached as Exhibit "G."  The Court's Order dated December 15, 2021 Re: (1) Entry of Judgment on Jury Verdict; and (2) Prejudgment Interest is attached as Exhibit "H."

22.   Pursuant to Exhibit F, the Court entered the following Findings of Fact:

> 22.1   "During the Project, King County ordered ICON to remediate property damage at various properties on Vashon Island where D & R, ICON's subcontractor, disposed of and/or placed asphalt millings because, pursuant to King County Code, asphalt millings are prohibited on Vashon Island, which is classified as an environmentally sensitive Critical Aquaphor Area."  *See* Exhibit F, at 3, ¶ 4.

COMPLAINT FOR DECLARATORY JUDGMENT NO.

PAGE 8

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

22.2     "After ICON's demands to D & R to perform this property damage remediation went unanswered and pursuant to King County's directive, ICON remediated property damage at multiple properties known as the Melita Pit, Misty Isle Farms, and the Williams Property." *Id*. ¶ 5.

22.3     "As additional millings remained on Vashon Island on private residences, including the personal property of the owners of D & R (the Hoffman Property), King County filed an enforcement action in May 2019 and Complaint on August 30, 2019 against ICON, asserting D & R disposed of and placed asphalt millings on various properties on Vashon Island which is classified as an environmentally sensitive Critical Aquaphor Recharge Area and seeking ICON remediate the Hoffman Property.  King County later amended its Complaint on March 18, 2021, to add additional private properties on Vashon Island.  King County also brought claims directly against D & R … for public nuisance." *Id*. ¶ 6.

22.4     "ICON filed a Third-Party Complaint against D & R on October 9, 2019, for breach of contract and indemnification under the Subcontract for both (a) the costs already incurred complying with King County's property damage remediation directives during the Project, and (b) to the extent any further costs were incurred as part of the lawsuit, code enforcement actions, or arising out of D & R's actions and inactions." *Id*. at 3-4, ¶ 7.

22.5     "On October 14, 2021, regarding the claims between ICON and D & R, the jury returned a verdict in favor of ICON in the amount of $683,764.81 for D & R's breach of the Subcontract.  With respect to D & R's contract balance, the jury found that no amounts were due to D & R." *Id*. at 5, ¶ 15.

23.     On January 12, 2022, D & R filed a Notice of Appeal regarding, among other things, Exhibits E – H.

**C.**      **The Insurance Claim**

24.      D & R tendered the claims asserted against it in the Underlying Action to Ohio Casualty for defense and indemnity coverage.

25.      In letters dated August 21, 2020, and February 3, 2022, Ohio Casualty agreed to defend D & R in the Underlying Action subject to a full reservation of rights, including the right to file a declaratory judgment action.  True and correct copies of the August 21, 2020, and February 3, 2022 letters are attached as Exhibits "I" and "J" respectively.

## V. COUNT I

### Declaratory Judgment – CGL Policy

26.      Ohio Casualty incorporates by reference all allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

27.      The CGL Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

28.      An actual and justiciable controversy exists between the parties regarding the existence and scope of coverage afforded by the CGL Policy.

29.      Pursuant to the express terms, conditions, exclusions, and limitations of the CGL Policy, there is no liability coverage available to D & R for the claims and damages alleged against D & R and/or for the jury verdict or resulting judgments entered against D & R in the Underlying Action.

30.      To the extent they apply, the insuring agreement of the CGL Policy only provides coverage for claims or suits seeking "damages."  The CGL Policy therefore does not afford coverage for any recovery based on equitable remedies such as injunctive relief that does not qualify as "damages."  To the extent such relief is alleged or awarded against D & R, the CGL Policy does not afford coverage.

31.      The claims, jury verdict, and judgments against D & R do not set forth damages because of "property damage caused by an occurrence" as further required by the insuring

agreement of the CGL Policy.

32.    The CGL Policy defines "property damage" to mean, in relevant part, "physical damage to or destruction of tangible property" including loss of use of this property.  To the extent the parties seek recovery for economic harm that does not involve damage to or destruction of "tangible property," the CGL Policy does not afford coverage.

33.    Even if the damages awarded against D &R fell within the insuring agreement of the CGL Policy, several exclusions would operate to exclude coverage.

34.    The CGL Policy does not apply to "property damage," if any, to property D&R Excavating owns, rents, or occupies, including any costs or expenses incurred by D&R Excavating, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.  Testimony at trial alleged some of the millings were dumped / stored on property owned by D & R.  To the extent any property damage occurred to D & R's property, and to the extent D & R has liability for the same, the CGL Policy affords no coverage.

35.    The CGL Policy does not provide coverage for "property damage," if any, for that particular part of real property throughout Vashon Island on which D & R was working if the damages arise out of those operations.  The coverage provided in the CGL Policy also does not apply to that particular part of any property that must be restored, repaired, or replaced because D & R's work was incorrectly performed on it.  Nor is there coverage for damage to impaired property arising from D & R's defective work or product or a delay by it or anyone acting on its behalf in performing a contract.  To the extent the jury's verdict or the trial court's resultant judgments identify damages because of "property damage," the CGL Policy affords no coverage by virtue of these exclusions.

36.    The CGL Policy affords no coverage for costs incurred solely to comply with statutes and regulations governing D & R's business operations.  The damages awarded against

D & R arose from its requirement to comply with KCC 16.82.100.A.4.d.

37.     The CGL Policy contains a "Contractual Liability" exclusion, which applies to "property damage" for which D & R is obligated to pay by reason of the assumption of liability in a contract or agreement and to the extent such contract or agreement does not constitute an "insured contract."  The judgments entered against D & R are damages for which D & R is obligated to pay by reason of the assumption of liability as set forth in Subcontract.  The Subcontract does not constitute an "insured contract."  As such, the "Contractual Liability" exclusion applies to the jury verdict and judgments entered against D & R in the Underlying Action.

38.     For these reasons, Ohio Casualty has no duty to defend or indemnify D & R under the CGL Policy with respect to the Underlying Action.

## VI. COUNT II

### Declaratory Judgment – Umbrella Policy

39.     Ohio Casualty incorporates by reference all allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

40.     The Umbrella Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

41.     An actual and justiciable controversy exists between the parties regarding the existence and scope of coverage afforded by the Umbrella Policy.

42.     As many of the provisions of the Umbrella Policy are similar or identical to those contained in the CGL Policy, the Umbrella Policy affords no coverage to D & R for the same bases as set forth in paragraphs 26 through 38 above.

43.     The Umbrella Policy provides coverage for liability for damages because of "property damage."  "Property damage" is defined, in part, as physical injury to tangible property" and "loss of use of tangible property that is not physically injured."  The jury's verdict and the trial court's resultant judgment(s) to ICON arises out of ICON's costs to

COMPLAINT FOR DECLARATORY JUDGMENT
NO.

PAGE 12     **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

relocate millings placed on private roads on various parcels on Vashon Island.  The jury's verdict and the trial court's resultant judgment to King County arises out King County's personnel costs to investigate and process permit applications.  The jury's verdict and the trial court's resultant judgments do not identify "property damage" as that term is defined in the Umbrella Policy.  The Umbrella Policy does not afford coverage for the jury verdict or judgments entered against D & R in the Underlying Action.

44.    The Umbrella Policy is subject to a "Damage to Property" exclusion, which is identical to the same exclusion contained in the CGL Policy as set forth in paragraphs 34 and 35 above.  The Umbrella Policy, therefore, does not afford coverage for the jury verdict or judgments entered against D & R in the Underlying Action.

## **REQUEST FOR RELIEF**

WHEREFORE, Ohio Casualty prays for judgment in its favor and against Defendants as follows:

A.    Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio Casualty has no duty to defend or indemnify D & R in the Underlying Action under the CGL Policy;

B.    Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio Casualty has no duty to defend or indemnify D & R in the Underlying Action under the Umbrella Policy;

C.    Such other and further relief as the Court deems just and appropriate.

//
//
//
//
//
//

1 | DATED:  February 4, 2022

2 | BULLIVANT HOUSER BAILEY PC

3 |

4 | By  */s/ Michael A. Guadagno*
    | Michael A. Guadagno, WSBA #34633
5 | E-mail: michael.guadagno@bullivant.com

6 |

7 | By  */s/ Elizabeth Hebel*
    | Elizabeth Hebel, WSBA #56708
    | E-mail: elizabeth.hebel@bullivant.com

8 |

9 | Attorneys for The Ohio Casualty Insurance
    | Company

10 | 4863-1424-1036.1

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |