1

2

**THE HONORABLE JAMAL N. WHITEHEAD**

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                        **WESTERN DISTRICT OF WASHINGTON**

9                                      **SEATTLE**

10  THE OHIO CASUALTY INSURANCE              )   Case No.: 2:22-cv-00137
    COMPANY,                                 )
11                                           )
                                             )   **CPM DEVELOPMENT CORP. DBA**
12              Plaintiff,                    )   **ICON MATERIALS' MOTION FOR**
                                             )   **SUMMARY JUDGMENT, OR IN THE**
13  v.                                       )   **ALTERNATIVE PARTIAL**
                                             )   **SUMMARY JUDGMENT;**
14  D & R EXCAVATING, INC., a Washington     )   **MEMORANDUM OF POINTS AND**
    corporation; DOUGLAS D. HOFFMAN and      )   **AUTHORITIES IN SUPPORT OF**
15  SUSAN K. HOFFMAN, and the marital        )   **MOTION FOR SUMMARY**
    community composed thereof; and CPM      )   **JUDGMENT, OR IN THE**
16  DEVELOPMENT CORP. dba ICON               )   **ALTERNATIVE PARTIAL**
    MATERIALS, a Washington corporation,     )   **SUMMARY JUDGMENT**
17  and KING COUNTY, a political subdivision  )
    of the State of Washington,              )
18                                           )   NOTING DATE: , 2023
                                             )
19              Defendants.                   )   ORAL ARGUMENT REQUESTED
                                             )
20  _____ )
                                             )
21  AND RELATED CROSS-ACTIONS                )

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 2

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................. 3

    A.    The Underlying Litigation. ................................................................. 3

    B.    The Policies and Insurance Claim. ..................................................... 6

    C.    This Declaratory Judgment Action. .................................................... 7

III. LEGAL ARGUMENT ............................................................................................... 7

    A.    Costs ICON Incurred to Remediate and Restore Properties Damaged By
              D&R's Placement of Millings Thereon Are Because of Covered Property
              Damage. ............................................................................................. 8

          1.    The Damages Awarded Against D&R In Favor of ICON Are For
                   "Property Damage" as Defined in The Policies. ............................... 9

          2.    The Property Damage Resulting From D&R's Placement of Millings
                   Was an "Occurrence" Within The Meaning of The Policies. ......................... 12

          3.    The Damages Awarded to ICON Against D&R Were For Restoring
                   Covered Property Damage. ............................................................. 13

    B.    OCIC's Discovery Responses Establish that it Cannot Show That There Are
              Triable Issues Of Fact That Policy Exclusions Operate To Bar Coverage For
              The Judgment Entered Against D&R. ............................................... 15

          1.    The Contract Between ICON And D&R Is An "Insured Contract" For
                   Which There Is Coverage Under The Policies. ............................. 20

IV. CONCLUSION ......................................................................................................... 22

MOTION FOR SUMMARY JUDGMENT OR IN        i        CASE NO:  2:22-cv-00137
THE ALTERNATIVE PARTIAL SUMMARY               Sullivan Hill Rez & Engel, APLC
JUDGMENT; AND MEMORANDUM OF POINTS           600 B Street, Suite 1700
AND AUTHORITIES IN SUPPORT THEREOF           San Diego, CA 92101  (619) 233-4100
#5517966v4

1

## TABLE OF AUTHORITIES

2

Cases                                                                                            Page(s)

3

American Nat. Fire Ins. Co. v. B & L Trucking and Const. Co., Inc.,
  134 Wash. 2d 413 (1998)................................................................................. 8

4

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).............................................................................. 16, 17

5

Boeing Co. v. Aetna Cas. And Sur. Co.,
  113 Wash. 2d 869 (1990)........................................................ 10, 11, 14, 15

6

California Architectural Building Products, inc. v. Franciscan Ceramics, Inc.,
  818 F. 2d 1466 (9th Cir. 1987) ...................................................................... 7

7

Cambridge Electronics Corp. v. MGA Electronics, Inc.,
  227 F.R.D. 313 (C.D. Cal. 2004) ................................................................ 18

8

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)............................................................................... 7, 16

9

Celotex Corp.,
  447 U.S. ......................................................................................................... 16

10

Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.,
  307 F. 3d 1127 (9th Cir. 2002) .................................................................... 12

11

Diamaco, Inc. v. Aetna Cas. & Sur. Co.,
  97 Wash. App. 335 (1999)........................................................................... 16

12

Gasaway v. N.W. Mut. Life Ins. Co.,
  26 F. 3d 957 (9th Cir. 1994) ......................................................................... 7

13

Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Illinois,
  421 F. 3d 835 (9th Cir. 2005) ....................................................................... 8

14

Koch v. Sachman-Phillips Inv. Co.,
  9 Wash. 405 (1894)...................................................................................... 10

15

Mutual of Enumclaw Ins. Co. v. T &G Const., Inc.,
  165 Wash. 2d 255 (2008)............................................................................... 9

16

Overton v. Consolidated Ins. Co.,
  145 Wash. 2d 417 (2002)..................................................................... 8, 9, 15

17

Phil Schroeder, Inc. v. Royal Globe Ins. Co.,
  99 Wash. 2d 65 (1983)................................................................................. 16

18

Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha,
  126 Wash. 2d 50 (1992)............................................................................... 12

19

Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha,
  126 Wash. 2d 50 (1994)............................................................................... 20

20

Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha,
  126 Wash. 2d .............................................................................................. 12

21

Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.,
  711 F. 2d 902 (9th Cir. 1983) ...................................................................... 17

22

Thomson v. King Feed & Nutrition Service, Inc.,
  153 Wash. 2d 447 (2005)............................................................. 10, 14, 15

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

ii

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1

<u>Yakima Cement Products Co. v. Great American Ins. Co.</u>,
    93 Wash. 2d 210 (1980) ........................................................................................... 12
<u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>,
    259 F. 3d 1101 (9th Cir. 2001) ............................................................................... 19

<u>Rules</u>

Fed. R. Civ. P. Rule 37(c)(1) ................................................................................. 18, 19, 20
Fed. R. Civ. P., Rule 33(d) ................................................................................................ 18
Fed. R. Civ. P. Rule 56(a) ............................................................................................... 1, 7

## MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

COMES NOW Defendant CMP Development Corp. dba ICON Materials ("ICON") and moves this Court for an order granting summary judgment for ICON and against Plaintiff The Ohio Casualty Insurance Company ("OCIC") as to OCIC's entire Complaint, including Counts 1 and 2 therein, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  In this Declaratory Judgment Action OCIC seeks a declaration that the judgment entered against its insured for ICON is not covered under two policies of insurance at issue.  ICON is entitled to summary judgment as a matter law because the pleadings and written discovery show that there is no genuine issue as to any material fact establishing that the judgment entered against Defendant D&R Excavating, Inc. ("D&R") and for ICON is covered under the relevant policies OCIC issued to D&R, and that no exclusions apply to bar coverage.  Thus, ICON moves this Court for a declaration that:

1. The judgment entered against D&R in litigation underlying this insurance coverage dispute in favor of ICON is covered under the primary policy of insurance OCIC issued to D&R (Count 1); and

2. The judgment entered against D&R in litigation underlying this insurance coverage dispute in favor of ICON is covered under the umbrella policy of insurance OCIC issued to D&R (Count 2).

IN THE ALTERNATIVE ICON moves this Court for partial summary judgment as to any one or more part of each claim and/or defenses at issue, including without limitation a finding that the judgment entered against D&R for ICON in the underlying litigation is covered in part, with a determination of which part of the judgment is covered to be determined at trial or through other appropriate proceedings.

This Motion is made pursuant to Federal Rules of Civil Procedure, Rule 56(a) and is based on this Motion, the enclosed Memorandum of Points and Authorities, the Declaration of Yaniv Newman, Esq., the Declaration of Lindsay Watkins, Esq., with all of the papers and exhibits attached thereto, the pleadings and records on file with this Court, and upon such other evidence and argument that may be presented in Reply to any Opposition to this Motion, and at oral argument hereon.

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

1

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

### I.

### INTRODUCTION

By this Declaratory Judgment Action, Plaintiff Ohio Casualty Insurance Company ("OCIC") seeks to relitigate the Underlying Action because it is dissatisfied with the judgment entered against its insured, Defendant D&R Excavating, Inc. ("D&R") for Defendant CPM Development Corp. dba ICON Materials ("ICON") – finding that D&R's placement of millings on Vashon Island in violation of King County Code created a public nuisance and property damage that had to be abated and/or remediated. This is despite the fact that the trial court made express and repeated findings that its award to ICON in the principal sum of $683,764.81 was for the costs ICON incurred remediating the "property damage" caused by its subcontractor, D&R.

Contrary to OCIC's unsubstantiated conclusory allegations, ICON has met its burden herein of establishing that there are no triable issues as to the fact that the damages awarded to ICON against D&R are damages D&R is legally obligated to pay because of property damage resulting from an occurrence during the policy period such that it is entirely covered under the relevant policies. At the same time, OCIC has failed to, and cannot, establish a triable issue of fact supporting its contention that certain policy exclusions bar coverage for the judgment awarded against D&R.

In the sixteen (16) months since it filed this Action, OCIC maintained that discovery was unnecessary and that the Court could decide the matter based on OCIC's Complaint and the attachments thereto. During the same time, ICON and D&R both conducted written discovery to prepare their respective cases for dispositive motion practice and/or trial. From outward appearances, OCIC did little during the same time period other than to provide hollow responses to ICON's discovery lacking any material substance.

For example, when asked to "state all facts" supporting its contention that D&R's placement of millings on Vashon Island did not cause property damage as alleged in its Complaint, OCIC responded with an attempted Rule 33(d) reference to "all pleadings, judgments, and discovery in the

MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF #5517966v4

2

CASE NO: 2:22-cv-00137 Sullivan Hill Rez & Engel, APLC 600 B Street, Suite 1700 San Diego, CA 92101  (619) 233-4100

1    UNDERLYING ACTION[, and] all trial testimony of witnesses and argument of counsel at the jury

2    trial in the UNDERLYING ACTION."  From the date of its Initial Discloses in May 2022 until the

3    discovery cutoff, OCIC offered nothing more than the foregoing to suggest it actually had evidence to

4    support its positions.

5         Context matters.  As alleged in its recent Motion for Stay, it was sometime during the foregoing

6    timeframe that OCIC realized the need to conduct discovery suggesting it had during that same time

7    discovered specific evidence or information with which it could have supplemented its Initial

8    Disclosures or responses to interrogatories pursuant to Rule 26(e).  As a result, and as discussed herein,

9    Rule 37(c)(1) bars OCIC from presenting evidence in opposition to this Motion that should have been

10   previously disclosed.

11        For the foregoing reasons and as further set out herein, ICON is entitle to judgment as a matter

12   of law, and a finding that the entire judgment awarded to it against OCIC's insured, D&R, is covered

13   under the subject OCIC insurance policies.  In the alternative, ICON asks that this Court to grant partial

14   summary judgment on the issue of OCIC's duty to indemnify D&R for the judgment against it, even

15   if only in part, leaving only the issue of how much is covered to be determined at trial or other

16   appropriate proceedings.

17                                          **II.**

18                     **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

19   **A.    The Underlying Litigation.**

20        This insurance dispute arises from litigation over the 2018 Vashon Island Highway SW

21   Pavement Preservation Project (the "Project").  (Dkt. # 1, ¶ 12.)  As part of the Project, asphalt millings

22   would be removed and disposed pursuant applicable contracts.  (Dkt. # 1, ¶¶ 13, 15.1; Dkt. # 1-4 at 3.)

23   Defendant CPM Development Corp. dba ICON Materials ("ICON") secured a contract with King

24   County, Washington ("King County"), and subcontracted with Defendant D&R Excavating, Inc.

25   ("D&R") to haul and dispose of asphalt millings generated by the Project.  (Dkt. # 1, ¶¶ 12, 13; *see*

26   *also,* Declaration of Yaniv Newman, Esq. ("Newman Decl."), ¶¶ 4 and 5, Exs. A and B [Response to

27   Request for Admission ("RFA") No. 2]; *see also,* Newman Dec., ¶ 7, Ex. D at 6:17-8:10.)

28

Because King County Code designates Vashon Island as a "Critical Aquifer Recharge Area," asphalt millings could not be permanently disposed anywhere on Vashon Island. (Dkt. # 1, ¶ 22.1; Dkt. # 1-9 at 3, ¶ 4.) *See also*, 16 King County Code ("K.C.C.") § 16.82.100 A.4.d. During the Project King County learned that D&R had stockpiled and disposed of millings at various properties on Vashon Island. (Dkt. # 1, ¶ 15.9.) In response to demands by King County, ICON made numerous demands to D&R to remove the millings placed on properties throughout Vashon Island, upon which D&R failed to act. (Dkt. # 1, ¶¶ 15.10-15.12.) Thereafter, at King County's direction, "ICON remediated the damage at several properties on Vashon Island." (Dkt. # 39, 2:3-4 [citing Dkt. # 1, ¶¶ 15.11, 15.12]; *see also*, Dkt. # 1 ¶ 15.13.)

Notwithstanding the remediation efforts, King County filed suit against ICON in King County Superior Court. (Dkt. # 1, ¶ 15.15; Dkt. 29, ¶ 3; hereinafter, the "Underlying Litigation".) ICON, in turn, filed an Answer and Third-Party Complaint against D&R, alleging D&R breached the subcontract, both by improperly disposing of the asphalt millings and by failing to defend and indemnify ICON against the County's claims – including for "damage or destruction of property. . . ." (Dkt. # 1, ¶ 15.16; Dkt. # 29, ¶ 4; Dkt. 29-2, ¶ 32.) King County then filed a counterclaim (the "Counterclaim") against D&R directly, alleging that D&R's disposal of millings on Vashon Island in violation of section 16.82.100A.4.d constituted a "per se" public nuisance. (Dkt. # 1, ¶ 16.1; Dkt. # 29, ¶ 5.)

The Underlying Litigation was tried by a jury in September and October 2021. (Dkt. # 1, ¶¶ 16, 17; Dkt. # 1-9 at 4, ¶ 11.) Before trial, the court granted ICON's motion for partial summary judgment, ruling that D&R breached its subcontract with ICON when it failed to defend, indemnify, and hold ICON harmless against King County's claims and directives related to D&R's work, including but not limited to D&R's failure to restore properties on Vashon Island to their condition before millings were placed thereon as directed by King County and ICON. (Dkt. # 1, ¶¶ 15.19; Dkt. # 1-4 at 7, ¶ 4.) The court ordered that "Icon's entitlement to an award of its costs, damages, losses, expenses, and attorneys' fees as a result of D&R's breach of the Subcontract will be determined at a later time." (Dkt. # 1-4 at 7, ¶ 5.) Thus, as relevant hereto, the issues at trial were limited to (1) King

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

4

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1  County's claim for nuisance per se against D&R; and (2) The amount of damages awarded to ICON

2  for D&R's breach of its duty to defend, indemnify, and hold ICON harmless against the County's

3  claims.[1]  (Dkt. # 1, ¶¶ 16.1, 16.2; Dkt. # 1-5; Dkt. # 1-9 at 4, ¶ 12.)

4       On the foregoing issues, the jury determined that D&R had violated section 16.82.100A.4.d by

5  depositing asphalt millings on properties throughout Vashon Island (Dkt. # 1, ¶ 17.1; Dkt. # 1-5 at 3);

6  and that ICON sustained damages in the amount of $683,674.81 consisting of the cost of labor and

7  equipment required to remediate three properties on Vashon Island where D&R had placed millings –

8  Melita Pit, Misty Isle Farms, and Williams Holding Property.  (Dkt. # 1, ¶¶ 17.4, 19, 20; Dkt. # 1-5 at

9  4.)

10      On December 15, 2021, the court entered an "Order re (1) Entry of Judgment on Jury Verdict;

11 and (2) Prejudgment Interest[]" (the "Order re Entry of Judgment").  (Dkt. # 1, ¶ 22; Dkt. # 1-9.)  The

12 Order re Entry of Judgment makes several findings of fact relevant hereto:

13      •    "During the Project, King County ordered ICON to remediate property damage at

14           various properties on Vashon Island where D&R . . . disposed of and/or placed asphalt

15           millings because, pursuant to King County Code, asphalt millings are prohibited on

16           Vashon Island, which is classified as an environmentally sensitive Critical Aquaphor

17           Recharge Area."  (Dkt. # 1, ¶ 21.1; Dkt. # 1-9 at 3, ¶ 4.)

18      •    "After ICON's demands to D&R to perform this property damage remediation went

19           unanswered and pursuant to King County's directives, ICON remediated property

20           damage at multiple properties known as the Melita Pit, Misty Isle Farms, and the

21           Williams Property."  (Dkt. # 1, ¶ 22.2; Dkt. # 1-9 at 3, ¶ 5.)

22      •    "ICON filed a Third-Party Complaint against D&R on October 9, 2019, for breach of

23           contract and indemnification under the Subcontract for . . . the costs already incurred

24           complying with King County's property damage remediation directives during the

25           Project . . . ."  (Dkt. # 1, ¶ 22.4; Dkt. # 1-9 at 3, ¶ 7.)

26

27  ───────────────
    [1] Not relevant to this Motion are the third and fourth issues resolved at trial – D&R's respective claims against King County
    and ICON.  (Dkt. # 1, ¶¶ 16.3, 17; Dkt. # 1-5 at 5.)

28  ────────────────────────────────────────────────────────────
    MOTION FOR SUMMARY JUDGMENT OR IN            5        CASE NO:  2:22-cv-00137
    THE ALTERNATIVE PARTIAL SUMMARY                       Sullivan Hill Rez & Engel, APLC
    JUDGMENT; AND MEMORANDUM OF POINTS                    600 B Street, Suite 1700
    AND AUTHORITIES IN SUPPORT THEREOF                    San Diego, CA 92101  (619) 233-4100
    #5517966v4

1

2

3

• "The final claims at trial consisted of . . . ICON's claim against D&R for breach of contract for . . . failure to defend, indemnify, and hold ICON harmless, as to the resulting property damage arising from D&R's work[.]" (Dkt. # 1-9 at 4, ¶ 12.)

4   The Court entered a judgment for ICON against D&R in the total amount of $984,996.61. The

5   judgment included the principal sum of $683,764.81 – the costs incurred to remediate the property

6   damage D&R caused – and $301,231.80 in prejudgment interest at a rate of eighteen percent (18%)

7   per annum, and further ordered that the judgment would continue to accrue post-judgment interest at

8   a rate of eighteen percent (18%) per annum. (Dkt. 1-8 at 2-3.) Thus, post-judgment interest accrues

9   at a rate of approximately $485.75 per day from the date of entry of said judgment, bringing the total

10  judgment against D&R (not including attorneys' fees awarded upon dismissal of D&R's claims against

11  ICON) to approximately $1,270,131.80 as of the date of filing this Motion.[2]

12  **B.     The Policies and Insurance Claim.**

13  OCIC issued two policies to D&R relevant to this Declaratory Judgment Action ("DJA").

14  (Dkt. # 1, ¶¶ 8-10.) OCIC issued commercial general liability policy no. BKO (19)57616262 to D&R

15  for policy period January 27, 2018 to January 27, 2019 (the "CGL Policy"). (Dkt. # 1, ¶ 9; Dkt. # 1-

16  2.) OCIC also issued commercial umbrella policy no. USO(19)57616262 to D&R for the same policy

17  period (the "Umbrella Policy" and with the CGL Policy, the "Policies"). (Dkt. # 1, ¶ 10; Dkt. # 1-3.)

18  The Policies "constitute a binding and enforceable contract setting forth the rights and obligations of

19  the parties." (Dkt. # 1, ¶¶ 27, 40.)

20  In relevant part, the Policies afford coverage for "those sums that [D&R] becomes legally

21  obligated to pay as damages because of . . . 'property damage'. . . ." (Dkt. # 1-2 at 80; Dkt. # 1-3 at

22  31; *See also,* Dkt. # 28 at 4:8-10.) "Property damage" is defined in the Policies to mean "physical

23  injury to tangible property" or "loss of use of tangible property that is not physically injured." (Dkt.

24  # 1, ¶¶ 31, 43; Dkt. # 1-2 at 95-96; Dkt. # 1-3 at 39.) In order to give rise to coverage, the "property

25  damage" must be caused by an "occurrence" during the policy period. (Dkt. # 1, ¶ 31; Dkt. # 1-2 at

26

27  ─────────────
[2] Total judgment: $683,764.81 + $301,231.80 = 984,996.61 x .18 = $177,299.38 / 365 = $485.75 interest accruing per day.

28

1   80; Dkt. # 1-3, 31.)  As relevant hereto, the Policies define an "occurrence" to mean "an accident,

2   including continuous or repeated exposure to substantially the same general harmful conditions."

3   (Dkt. # 1-2 at 95; Dkt. # 1-3 at 38.)

4        OCIC asserts that a variety of exclusions in the Policies act as a bar to coverage.  (Dkt. # 1,

5   ¶¶ 35-37, 42, 44; Dkt. # 1-10; Dkt. # 1-11; Newman Decl., ¶¶ 8, 10, Ex. E at 23:23-24:15, Ex. G at

6   10:6-13:3.)  OCIC *does not* contend that millings are a "pollutant" within the meaning of the Policies

7   such that OCIC *does not* contend the "pollution exclusion" to the Policies bars coverage for ICON's

8   judgment against D&R.  (Newman Decl., ¶ 8, Ex. E at 24:17-25:9.)

9   **C.**     **This Declaratory Judgment Action.**

10       OCIC filed this DJA on February 4, 2022, asserting, as relevant hereto, that it has no duty to

11   indemnify D&R for the judgment awarded against it in favor of ICON.  (Dkt. # 1.)

12                                              **III.**

13                                     **LEGAL ARGUMENT**

14       Defendant ICON is entitled to judgment as a matter of law because the pleadings and Plaintiff

15   OCIC's responses to written discovery demonstrate that there are no triable issues as to any material

16   fact establishing that the judgment entered for ICON against D&R in the Underlying Litigation is

17   covered under the Policies' insuring agreements, and no exclusions apply to bar coverage.  *See,* Fed.

18   R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-25 (1986) ("[T]he burden on the moving

19   party may be discharged by 'showing' – that is, pointing out to the district court – that there is an

20   absence of evidence to support the nonmoving party's case."); *See, e.g.,* <u>Gasaway v. N.W. Mut. Life</u>

21   <u>Ins. Co.</u>, 26 F. 3d 957, 959-960 (9th Cir. 1994) (insurer met its burden of proof by showing the absence

22   of a disputed material fact, shifting the burden to the insured to produce evidence to show that a

23   disputed issue of material existed); *see also,* <u>California Architectural Building Products, inc. v.</u>

24   <u>Franciscan Ceramics, Inc.</u>, 818 F. 2d 1466, 1468 (9th Cir. 1987) (moving party may rely on absence

25   of evidence to show material facts are not in dispute).

26

27

28

1    In determining whether coverage exists under the Policies, this Court applies substantive law

2    of Washington governing insurance. *See* <u>Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Illinois</u>,

3    421 F. 3d 835, 841 (9th Cir. 2005).

4        In Washington, insurance policies are construed as contracts. [Citation]. An insurance
5        policy is construed as a whole, with the policy being given a "fair, reasonable, and
         sensible construction as would be given to the contract by the average person
6        purchasing insurance." [Citation]. If the language is clear and unambiguous, the court
         must enforce it as written and may not modify it or create ambiguity where none exists.
7        [Citation]. If the clause is ambiguous, however, extrinsic evidence of the intent of the
         parties may be relied upon to resolve the ambiguity. [Citation]. Any ambiguities
8        remaining after examining applicable extrinsic evidence are resolved against the
         drafter-insurer and in favor of the insured. [Citations]. A clause is ambiguous when,
9        on its face, it is fairly susceptible to two different interpretations, both of which are
         reasonable. [Citation].

10   <u>American Nat. Fire Ins. Co. v. B & L Trucking and Const. Co., Inc.</u>, 134 Wash. 2d 413, 427-428

11   (1998).

12   Further, "[d]etermining whether coverage exists under a [liability] policy is a two-step process.

13   [Citation]. The burden first falls on the insured to show its loss is within the scope of the policy's

14   insured losses. [Citation]. If such a showing has been made, the insurer can nevertheless avoid

15   liability by showing the loss is excluded by specific policy language. [Citation]." <u>Overton v.</u>

16   <u>Consolidated Ins. Co.</u>, 145 Wash. 2d 417, 432 (2002).

17   Applying the foregoing analysis to the facts and circumstances disclosed by the pleadings and

18   responses to written discovery in this DJA show that OCIC cannot present evidence creating a triable

19   issues of material fact as to whether the judgment against D&R in favor of ICON is covered under the

20   terms, conditions, exclusions, and limitations of the Policies. The judgment is covered.

21   **A.    <u>Costs ICON Incurred to Remediate and Restore Properties Damaged By D&R's</u>**
     **<u>Placement of Millings Thereon Are Because of Covered Property Damage</u>.**

22

23   The damages awarded to ICON against D&R fall within the Policies' insuring agreements

24   because they are damages D&R is forced to pay for property damage caused by an occurrence during

25   the policy period. (*See,* Dkt. # 1, ¶¶ 17.4, 19, 20; Dkt. # 1-5 at 4.)

26   The Policies' insuring agreements provide that OCIC "will pay those sums that [D&R]

27   becomes legally obligated to pay as damages because of . . . 'property damage' to which th[e]

28

insurance applies." (Dkt. # 1-2 at 80; Dkt. # 1-3 at 31; *See also,* Dkt. # 28 at 4:8-10.) As relevant hereto, the Policies further provide that the "insurance applies to . . . 'property damage' . . . caused by an 'occurrence'. . . during the policy period. . . ."[3] (Dkt. # 1, ¶ 31; Dkt. # 1-2 at 80; Dkt. # 1-3, 31.)

Thus, the first inquiry in the "two-step process" turns on whether the damages awarded to ICON fall within the definition of "property damage" caused by an event/circumstance that satisfies the Policies' definition of an "occurrence." <u>Overton</u>, 145 Wash. 2d at 432.

### 1. **The Damages Awarded Against D&R in Favor of ICON Are For "Property Damage" as Defined in The Policies.**

D&R's placement of millings on properties throughout Vashon Island caused "property damage" within the meaning of the Policies.

The Policies define "property damage" in two ways:

a. Physical injury to tangible property, including all resulting loss of use of that property.
     . . .

b. Loss of use of tangible property that is not physically injured. . . .

(Dkt. # 1, ¶ 32; Dkt. # 1-2 at 95-96; Dkt. # 1-3 at 39.)

> *a.  The Trial Court Already Concluded That The Damages Awarded Against D&R Are For Costs ICON Incurred Remediating Property Damage That D&R Caused.*

The trial court concluded throughout its Order re Entry of Judgment that the damages awarded ICON and against D&R were "for . . . the costs already incurred complying with King County's property damage remediation directive during the Project." (Dkt. # 1, ¶ 22; Dkt. # 1-9 at 3-4, ¶¶ 4-7, 12.) "Generally speaking, 'an insurer will be bound by the findings, conclusions and judgment entered in the action against the tortfeasor when it has notice and an opportunity to intervene in the underlying action." <u>Mutual of Enumclaw Ins. Co. v. T &G Const., Inc.</u>, 165 Wash. 2d 255, 263 (2008).

OCIC not only had a chance to intervene, it actually defended D&R in the Underlying Litigation subject to a reservation of rights. (Dkt. # 1, ¶ 25; Dtk. # 1-10; Dtk. # 1-11.) OCIC ought to

---

[3] OCIC has never alleged nor contended in response to discovery that the conduct giving rise to D&R's liability occurred outside the policy period or outside the coverage territory. (Dkt. # 1;*see also,* Newman Decl. ¶ 7, Ex. D at 7:1-8:19; Watkins Decl., ¶ 4, Ex. A at 726:24-727:14.)

MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

9

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

be bound by the trial court's finding of "property damage," and it ought not be permitted to relitigate the issues already litigated in the Underlying Litigation in this Court.

Moreover, OCIC has failed to present evidence that would create a triable issue of fact that the trial court meant something *other than* that the judgment awarded to ICON against D&R was for the cost to remediate "[p]hysical injury to tangible property" or to restore the properties to their condition before placement of millings thereon resulted in "[l]oss of use of tangible property without physical injury." (Dkt. # 1, ¶ 31; Newman Decl., ¶¶ 8, 10, Ex. E at 22:2-23:21, Ex. G at 6:9-10:3.) *See,* Section II.B., *infra* (discussing inadequacy of OCIC's discovery responses.)

"The purpose of awarding damages in cases involving injury to real property is to return the injured party as nearly as possible to the position he would have been in had the wrongful act not occurred." Thomson v. King Feed & Nutrition Service, Inc., 153 Wash. 2d 447, 459 (2005). The trial court did just that in awarding ICON the costs incurred to "remediate property damage" resulting from D&R's placement of millings on the properties in question in the Underlying Litigation. (Dkt. # 1, ¶¶ 19, 20.)

It couldn't be much clearer than the findings of fact the trial court made in support of the judgment entered against D&R. But even if the court's factual findings are ignored, and regardless of which definition of "property damage" applies – i.e., physical injury or loss of use – the placement of millings is absolutely "property damage" as defined in the Policies.

       *b. The Remediation Costs Awarded to ICON Against D&R Were Inherently For Property Damage Covered Under The Policies.*

As the Washington Supreme Court has expressly stated, "[t]he cost of repairing and restoring property to its original condition has long been considered proper measure of damages for property damage." Boeing Co. v. Aetna Cas. And Sur. Co., 113 Wash. 2d 869, 884 (1990) (citing Koch v. Sachman-Phillips Inv. Co., 9 Wash. 405 (1894). In other words, the measure of damages awarded to ICON against D&R for placing millings on three properties on Vashon Island (*see,* Dkt. # 1, ¶¶ 19, 20) has been the appropriate measure of damages in Washington since at least the 19th century. *See,* Koch, 9 Wash. 405. Notably, in Koch the damage in question occurred when a contractor performed

MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF #5517966v4

10

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1   their work in such a way as allowed soil to run onto the injured land in much the same way as D&R

2   placed millings on private properties.

3        In any event, no matter how the question is analyzed, the placement of millings on properties

4   on Vashon Island damaged those properties because asphalt millings could not be permanently

5   disposed anywhere on Vashon Island by virtue of its designation as a "Critical Aquifer Recharge

6   Area,". (Dkt. # 1, ¶ 22.1; Dkt. # 1-9 at 3, ¶ 4); *see also,* Title 16 K.C.C. § 16.82.100 A.4.d; Title 23,

7   K.C.C., §§ 23.02.030 ("civil code violations are . . . detrimental to the public health, safety and

8   environment and are hereby declared public nuisances."); 23.01.020 ("Abatement or remediation

9   should be pursued when appropriate and feasible."); 23.02.010 A (" 'Abate' means . . . to return a

10  property to the condition in which it existed before a civil code violation occurred. . . .") & M ("

11  'Remediate' means to restore a site to a condition that complies with critical area or other regulatory

12  requirements as they existed when the violation occurred. . . .")

13       Property owners are not given a choice to keep the materials on the land in question. It makes

14  no difference if a given property's owner does not believe the placement of millings on the given

15  property amounts to property damage. The County Code says that it does, and that failure to remove

16  the millings and remediate the property in question amounts to a public nuisance. Title 16 K.C.C. §

17  16.82.100 A.4.d. As a result, the jury in the Underlying Litigation found that "D&R violated KCC

18  16.82.100A.4.d . . ." (Dkt. # 1, ¶ 16.1; Dkt. # 1-5 at 2, Question 1; Dkt. # 29, ¶ 5), and the trial court

19  found that "in doing so it created a public nuisance." (Dkt. # 1, ¶ 21; Dkt. 1-7 at 3:17-18.) The millings

20  had to be removed, and the property owner is ultimately responsible for that remediation expense.

21  *See,* Title 23.02.130 B. (owner demonstrating that action resulting in violation done without owner's

22  knowledge or consent "shall be responsible . . . for bringing the property into compliance. . . [,]" and

23  if owner does not take measures to correct violation, "abatement costs necessary to bring the property

24  into a safe and reasonable condition . . . shall be assessed [to the owner] by the county.")

25       In Boeing the Court noted that " '[p]roperty damage' includes discharge of hazardous waste

26  into water." Boeing Co., 113 Wash. 2d at 886. While in that case the Supreme Court was specifically

27  addressing a pollutant – not material such as the millings at issue here that are not a pollutant but are

28

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

11

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

prohibited by law from being placed on Vashon Island – the reason for the Court's conclusion applies with equal force.  In both instances, pollutant and millings (not a pollutant according to OCIC's discovery responses [Newman Decl., ¶ 8, Ex. E at 24:17-25:11]), the material in question cannot and is not allowed to remain on the property such that its placement resulted in physical injury to property as "property damage" is defined in the Policies.

Finally, even if it can be said that placement of millings did not cause physical injury to tangible property, their placement absolutely resulted in loss of use of the property – *at least* so long as it was being remediated.

## 2.   The Property Damage Resulting From D&R's Placement of Millings Was an "Occurrence" Within The Meaning of The Policies.

D&R's unauthorized placement of millings on the various properties throughout Vashon Island resulted in property damage caused by an "occurrence" as defined in the Policies.  *See,* Yakima Cement Products Co. v. Great American Ins. Co., 93 Wash. 2d 210, 215 (1980); *See also,* Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha, 126 Wash. 2d 50 (1992); *see also,* Dewitt Const. Inc. v. Charter Oak Fire Ins. Co., 307 F. 3d 1127, 1133 (9th Cir. 2002) (citing Yakima Cement Products for proposition that unintended resulting injury from intentional act is an "occurrence").

The Policies define an "occurrence" to "mean[] an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Dkt. # 1-2 at 95; Dkt. # 1-3 at 38.) The term "accident" within the definition of "occurrence" is not defined in the Policies.  (Dkt. # 1-2; Dkt. # 1-3.)  The Washington Supreme Court defines an accident to be " 'an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause.' ([Citation].)" Yakima Cement Products, 93 Wash. 2d at 215.  The question is not whether the placement of millings was intentional or unintentional.  Rather, the inquiry is to determine whether D&R was aware that placing millings on private properties throughout Vashon Island was causing property damage.  Id. Whether D&R knew or didn't know that it was causing property damage by placing millings throughout Vashon Island is determined subjectively from D&R's standpoint.  *See,* Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha, 126 Wash. 2d at 69 ("injury or damage resulting from acts of

MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF #5517966v4

12

CASE NO:  2:22-cv-00137 Sullivan Hill Rez & Engel, APLC 600 B Street, Suite 1700 San Diego, CA 92101  (619) 233-4100

1  negligence, even though precipitated by an intentional act, would be covered under the occurrence

2  clause.")

3      The evidence in the Underlying Litigation is clear – D&R's principal, Doug Hoffmann, did

4  not expect or intend to cause injury by placing millings on properties throughout Vashon Island.

5  Hoffmann maintained throughout trial that that there is nothing wrong – at law or otherwise – with

6  placing millings anywhere on Vashon Island.  (Declaration of Lindsay Watkins, Esq. ("Watkins

7  Decl."), ¶ 4, Ex. A at 668:9-669:11, 734:16-735:22.)  In short, Hoffmann and/or D&R did not believe

8  placing millings on properties on Vashon Island would cause property damage, nor was there an intent

9  to do so.  (Id.)

10     Thus, it follows that the property damage resulting from the placement of millings on

11  properties on Vashon Island was an "occurrence" within the meaning of the Policy.

12     Other than conclusory statements in its Complaint (Dkt. # 1, ¶ 31) and its post-judgment

13  reservation of rights letter to D&R (Dkt. # 1-11 at 29) that the placement of millings is not an

14  "occurrence" within the meaning of the policy, OCIC does not provide a factual or legal basis in either

15  document to support its position.

16     **3.  <u>The Damages Awarded to ICON Against D&R Were For Restoring Covered</u>**

17     **<u>Property Damage</u>.**

18     The allegations in OCIC's Complaint that the judgment against D&R is not covered because

19  it is equitable in nature and/or because there is no coverage for the damages "solely to comply with

20  statutes and regulations" (Dkt. # 1, ¶ 36) cannot withstand scrutiny.  Moreover, the allegation fails

21  completely to address the fact that the Umbrella Policy covers "sums . . . that the 'Insured' becomes

22  legally obligated to pay by reason of liability imposed by law. . . ."  (Dkt. # 1-2 at 31.)  Either way,

23  the unsupported assertion fails because neither Policy defines the term referring to "damages" (i.e.,

24  "sums" and "liability imposed by law" in the Umbrella Policy.)  (Dkt. # 1-2; Dkt. # 1-3.)

25     The judgment against D&R is covered regardless of whether the award is considered legal or

26  equitable.  The term "as damages" in the CGL Policy's insuring agreement is not defined (i.e., "[OCIC]

27  will pay those sums that [D&R] becomes legally obligated to pay as ***damages*** because of . . . 'property

28

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

13

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1   damage' . . . ." [(emphasis added)]).[4]   Considering an argument similar to OCIC's here, the

2   Washington Supreme Court reiterated that "[u]ndefined terms in an insurance contract must be given

3   their 'plain, ordinary, and popular' meaning."  Boeing, 113 Wash. 2d at 877.  Applying various

4   dictionary definitions, the Court concludes that the term "as damages" in the insuring agreement is

5   understood to mean "sums awarded on a 'legal' or 'equitable' claim[]" without distinguishing between

6   the two.  Id.  In other words, "damages" means damages.  The damages awarded to ICON against

7   D&R are covered so long as other policy terms and conditions are met.

8          Nor is the fact that a statute prohibited the placement of millings on Vashon Island

9   determinative of coverage.  "The purposes of awarding damages in cases involving injury to real

10  property is to return the injured party as nearly as possible to the position he would have been in had

11  the wrongful act not occurred."  Thomson v. King Feed & Nutrition Service, Inc., 153 Wash. 2d 447,

12  459 (2005).  The award in the Underlying Litigation included an award of $683,763.81 based on

13  ICON's evidence of the costs incurred to restore the properties upon which D&R placed millings to

14  their condition before the millings were placed thereon.  (Dkt. # 1, ¶¶ 15.3, 15.19, 19, 20, 22.1, 22.2,

15  22.4, 22.5; Dkt. # 1-4 at 4, ¶ 16 and 7, ¶ 4; 1-9 at 3-4, ¶¶ 4, 5, 7, 12; see also, Dkt. # 39, 3-4.)  The trial

16  court made express factual findings that the award was for remediation of property damage.  (Id.)

17         Even if, for the sake of argument, the damages awarded to ICON against D&R were for "costs

18  incurred solely to comply with statutes or ordinances . . ." as alleged in OCIC's Complaint (Dkt. # 1,

19  ¶ 36), the Policies do not, as relevant to the issues herein, contain any provision limiting coverage for

20  such damages.  (See, Dkt. # 1-2; Dtk. # 1-3.)  The statutes in question resulted in a finding that D&R's

21  violation thereof created a public nuisance per se (see, Dkt. # 1, ¶¶ 16.1; Dtk. # 1-7 at 3:17-19), such

22  that any properties upon which D&R placed millings, including the three forming the basis for

23  damages awarded to ICON, had to be remediated and restored to their condition before the injury

24  causing placement of millings.  16 K.C.C § 16.82.100 A.4.d; 23 K.C.C. §§ 23.02.030, 23.01.020,

25

26  _____

27  [4] Nonetheless, the analysis herein of the undefined term "damages" applies equally to the undefined terms in the Umbrella Policy referring to "sums" and "liability imposed by law."  Like the CGL Policy, nothing in the Umbrella Policy indicates that the "sums" and "liability imposed by law" does not include damages that might be considered equitable in nature.

28

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

14

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1   23.02.010 A, 23.02.010 M.  In other words, an award of legal damages for the cost to remediate the

2   damage done to those properties.  *See*, Thomson, 153 Wash. 2d at 459; Boeing Co., 113 Wash. 2d at

3   884 ("The cost of repairing and restoring property to its original condition has long been considered

4   proper measure of damages for property damage.")

5           The result of placing the millings on private properties on Vashon Island was to create a condition

6   on those properties that *had to be* remediated.  To argue that there should be no coverage because the

7   properties in question needed to be remediated because there is an ordinance in place prohibiting the

8   placement of millings on any property on Vashon Islan puts form over substance.  As the Court explained

9   in Boeing when it concluded "that cleanup costs are essentially compensatory damages for injury to

10  property. . . . [Citations]. . . .  '[C]overage does not hinge on the form of action taken or the nature of

11  relief sought, but on an actual or threatened use of legal process to coerce payment or conduct by a

12  policyholder.  [Citation]."  Boeing, 113 Wash. 2d at 878.

13          Thus, it makes no difference that the costs to remediate the property damage (as the trial court

14  found) caused to properties on Vashon Island when D&R placed millings on them resulted from the

15  prohibition of placing millings on Vashon Island.  The ultimate result of the prohibition was that ICON

16  incurred costs to restore the properties to their condition before D&R caused damage to those

17  properties by placing millings thereon.  It does not matter that ICON incurred those costs, or if the

18  individual owners were compelled to incur those costs and pursue D&R for their losses.

19          The fact is that the reason *why* millings are not allowed on Vashon Island is not as important

20  as the fact that *they are not*, and that placing millings on properties on Vashon Island therefore results

21  in property damage that must be remediated.

22  **B.    OCIC's Discovery Responses Establish that it Cannot Show That There Are Triable
23         Issues Of Fact That Policy Exclusions Operate To Bar Coverage For The Judgment
       Entered Against D&R.**

24          After determining that the judgment awarded to ICON against D&R is covered under the

25  Policies' respective Insuring Agreements, the next step in the "two-step" analysis is to determine

26  whether "[OCIC] can nevertheless avoid liability by showing the loss is excluded by specific policy

27  language."  Overton, 145 Wash. 2d at 432.  "Because coverage exclusions 'are contrary to the

28

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4                    15    CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1    fundamental protective purpose of insurance,' they are 'strictly construed against the insurer' and' will

2    not be extended beyond their clear and unequivocal meaning.'" <u>Diamaco, Inc. v. Aetna Cas. & Sur.</u>

3    <u>Co.</u>, 97 Wash. App. 335, 342 (1999); *See also,* <u>Phil Schroeder, Inc. v. Royal Globe Ins. Co.</u>, 99 Wash.

4    2d 65, 68 (1983) ("exclusions strictly construed against insurer.")  Based on the pleadings and OCIC's

5    responses to interrogatories, OCIC has failed to produce or identify evidence that would be admissible

6    at trial to create a triable issue of fact that coverage for ICON's judgment against D&R "is excluded

7    by specific policy."  <u>Id.</u>; *See also,* <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324; <u>Anderson v. Liberty</u>

8    <u>Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

9         Apart from specific reference to certain documents not relevant hereto, OCIC's Complaint,

10   Rule 26 Initial Disclosures, pleadings, and responses to interrogatories specifically requesting OCIC

11   to identify facts, documents, and information upon which it intends to rely at trial fail to disclose

12   evidence supporting either that the judgment is not within the Policies' respective Insuring

13   Agreements, or that coverage for the judgment is otherwise excluded by a specific policy term.  *See,*

14   <u>Celotex Corp.</u>, 447 U.S. at 321-322; *See also,* <u>Anderson</u>, 477 U.S. at 247 ("standard provides that the

15   mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

16   properly supported motion for summary judgment; the requirement is that there be no *genuine* issue

17   of *material* fact.") (Emphasis in original.)

18        OCIC's Rule 26 Initial Disclosures identified, among other documents it contends would

19   support its claims, "[a]ll operative pleadings, filings, and orders in the Underlying Lawsuit[, and a]ll

20   discovery submitted by all parties in the Underlying Lawsuit. . . ." (Newman Decl., ¶ 6, Ex. C at 4:12-

21   26.)   The trial exhibits alone exceeded 1,000 documents – the record to which OCIC refers is

22   comprised of many thousands of documents.  (Watkins Decl. ¶ 5, Ex. B.)  This amounts to nothing

23   more than pointing at a haystack when asked for the needle.  Assuming a needle exists, it may be in

24   the haystack, but without a magnet or specific directions finding it among the straw is an

25   insurmountable task.

26        In response to ICON's interrogatory asking OCIC to "describe in detail the reasonably-

27   anticipated substance of the knowledge possessed by" the approximately sixty (60) witnesses

28

identified in a prior interrogatory, OCIC responded as to some that they "*may* have knowledge of facts relevant to" this Action; and that others, "property owners on Vashon Island believed to have had millings placed . . . on their property[,] . . . are expected to testify that" their respective properties were not damaged by the placement of millings. (Newman Decl., ¶ 8, Ex. E at 12:8-14:11.) As to the latter, OCIC discloses in response to a subsequent interrogatory that it has no basis for its stated "expec[ation]" of how property owners will testify because it discloses that it has not communicated with any of them (Newman Decl., ¶ 8, Ex. E at 20:13-19); as to the former, that some unspecified person(s) "may" have knowledge is insufficient to create a triable issue of fact. *See*, <u>Anderson</u>, 477 U.S. at 247.

In response to interrogatories asking OCIC to "STATE ALL FACTS" supporting its contention that D&R did not cause property damage, OCIC sought to exercise its right under Rule 33(d) by referring to documents. (Newman Decl., ¶ 8, Ex. E at 22:2-24:15.) However, it then fails entirely at its "duty to specify, by category and location, the records from which answers" to the interrogatory can be derived (<u>Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.</u>, 711 F. 2d 902, 906 (9th Cir. 1983) by generically responding:

> Ohio relies on all pleadings, judgments, and discovery in the UNDERLYIN ACTION.
> Ohio further relies on all trial testimony of witnesses and argument of counsel at the jury trial in the UNDELRYING ACTION.

(Newman Decl., ¶¶ 8, 10, Ex. E at 22:2-24, Ex. G at 6:9-8:5.) OCIC responds similarly to other interrogatories without specifically identifying any documents. (Newman Decl., ¶¶ 8, 10, Ex. E at 23:1-21, Ex. G at 8:8-10:3.)

Similarly, in response to interrogatories asking OCIC to identify exclusions it contends bar coverage and the facts supporting them, OCIC does *nothing* more than to refer ICON to OCIC's "coverage position letters to D&R." (Newman Decl., ¶¶ 8, 10, Ex. E at 23:23-24:15, Ex. G at 10:6-13:4.)[5] Even if OCIC's responses referencing its reservation of rights letters are sufficiently specific to allow ICON to locate and identify them, they are nothing more than letters reserving rights to deny

---

[5] I.e., Dkt. # 1-2 and Dkt. # 1-3.

1  coverage "under all policy provisions (including conditions and exclusions)[.]"  (Dkt. # 1-10 at 14, ¶

2  6; *see also* Dkt. # 1-11 at 30, ¶ 5 ["O[CIC] hereby expressly reserves the right to assert at a later date

3  any rights or defenses, whether or not stated herein, that may be available now or at any point in

4  time."])

5        While the two letters purport to provide factual bases for the reservations therein, they refer

6  only to the facts and information contained in the pleadings attached and incorporated into OCIC's

7  Complaint, which, as discussed above, fail to create a triable issue of fact or evidence as to whether

8  any of the exclusions actually apply to preclude coverage.  In essence, the response therefore circularly

9  refers ICON to its Complaint and the attachments incorporated therein – ironically including the two

10  letters.  OCIC's circular reliance on its Complaint and the attachments thereto is not entirely surprising

11  given its April 22, 2022 contention:

12        that the Court can adjudicate the issues of Ohio Casualty's duties to defend and
        indemnify D & R (or lack thereof) in connection with the Underlying Lawsuit based
13        on the complaint filed in this action and the exhibits thereto (which include the
        operative complaint filed in the Underlying Lawsuit, the Ohio Casualty policies, and
14        certain correspondence relating to the subject matter of the Underling [sic] Lawsuit).

15  (Dkt. # 18, 3:19-23.)

16        In interrogatory responses served on June 9, 2023 – less than a month before the close of fact

17  discovery – asking OCIC to identify documents supporting asserted exclusions, OCIC once again

18  evasively refers to "[a]ll pleadings, judgments, and discovery in the UNDERLYING ACTION[, and

19  a]ll documents identified in the above-captioned parties' Initial Disclosures[,]" (Newman Decl., ¶ 10,

20  Ex. G at 14:4-15:1) thus depriving ICON of meaningful responses that would narrow and identify the

21  real issues for this Motion and for trial, if necessary.

22        To summarize, OCIC has failed to disclose in response to any discovery any specific evidence

23  or information that supports application of any exclusion in the Policies.  Its failure to do so demands

24  that the Court not consider any material beyond that which OCIC specifically identified in support of

25  its claims.  *See,* Fed. R. Civ. P. Rule 37(c)(1); Cambridge Electronics Corp. v. MGA Electronics, Inc.,

26  227 F.R.D. 313 (C.D. Cal. 2004) (party failing to identify documents with specificity required in Fed.

27  R. Civ. P., Rule 33(d) is precluded by Rule 37(c)(1) "automatic[ally] and mandator[ily]" from

28

otherwise identifying documents in declaration supporting opposition to motion for summary judgment "unless [the party] can show harmlessness or substantial justification.") (Citing <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F. 3d 1101 (9th Cir. 2001) (noting "[t]he Advisory Committee Notes describe [the Rule 37(c)(1)] as a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material....' [Citation].")

> Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded. . . .  Thus, even though [the party to be sanctioned] never violated an explicit court order to produce the [information] and even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a) [and/or (e)].

<u>Yeti by Molly</u>, 259 F. 3d at 1106.  There is no evidence in the record that either of the "[t]wo express exceptions ameliorat[ing] the harshness of Rule 37(c)(1)" apply to OCIC's insufficient discovery responses.  *See,* <u>Id</u>.

OCIC cannot establish that its failure to respond more fully to discovery or supplement its Initial Disclosures and/or interrogatory responses to more specifically identify facts, documents, and information supporting its contentions was justified or harmless.  *See,* <u>Id</u>.  OCIC filed its Complaint on February 4, 2022.  (Dkt. # 1.)  Approximately two months later OCIC represented to this Court "that no discovery is necessary to resolve the present case . . . [because] the Court can adjudicate the issues of Ohio Casualty's duties to defend and indemnify D & R . . . based on the complaint . . . and the exhibits thereto. . . ."  (Dkt. # 18 at 3:18-23.)  On February 9, 2023 (nearly one year to the day from the date of filing) ICON and OCIC jointly asked the Court for a 90-120 day continuance of the trial and all related cutoff dates to allow the parties an opportunity to mediate.  (Dkt. # 37.)  The matter did not settle at mediation, and ICON propounded additional discovery to OCIC on May 10, 2023.  (Newman Decl., ¶¶ 10, 11.)

At no time before its June 9, 2023, Motion for Stay (filed less than a month before the June 26, 2023 discovery cutoff) did OCIC *ever* contend that it would, in fact, need to conduct discovery.  (Newman Decl., ¶ 12; *see also,* Dkt. # 41 at 12:24-13:1.)  In other words, from outward appearances, OCIC sat on its hands for over a year doing little else but responding to D&R's and ICON's respective discovery.  (Newman Decl., ¶ 13.)  The only exception is that during the pendency of this DJA OCIC

MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF #5517966v4

19

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1   was purportedly preparing a motion for summary judgment, but purportedly discovered it could not

2   do so without risking D&R's liability defenses.  (Dkt. # 41 at 12:23-13:9.)  Presumably OCIC intended

3   to rely on specific evidence and/or documentation of which it was aware.  Notwithstanding purportedly

4   having at some point identified specific information supporting its claims, OCIC never supplemented

5   its vague responses generally identifying all documents generated in the Underlying Litigation.

6   OCIC's failure to provide complete responses and/or to update its Initial Disclosures and responses to

7   interrogatories as required by Rule 26(e) was not justified.

8        Nor is OCIC's failing harmless.  ICON has a judgment against D&R that it believes is covered

9   by OCIC, and which OCIC is obligated to satisfy.  It has had that judgment since December 2021.

10  Over the past year ICON has strived to prepare itself for this Motion and for trial, if necessary.

11  Allowing OCIC to now, finally after almost 18 months since filing, begin to conduct discovery and/or

12  provide substantive responses will cause further delay in ICON's recovery of its judgment.  Moreover,

13  it would require ICON to revisit much of the litigation strategy that has led to this Motion, which

14  would come at significant expense.

15       OCIC's failures to provide substantive responses to interrogatories and/or to supplement those

16  responses and/or its Initial Disclosures pursuant to its obligations under Rule 26(e) are inexcusable

17  such that Rule 37(c)(1) acts to prevent OCIC from introducing any evidence in opposition to this

18  Motion that should have been specifically disclosed or identified in Initial Disclosures and responses

19  to interrogatories.

20  **1.  The Contract Between ICON And D&R Is An "Insured Contract" For Which There Is Coverage Under The Policies.**

21

22       Among the exclusions asserted in OCIC's Complaint, one – the "Contractual Liability"

23  Exclusion" – bears discussion here given ICON bears the burden of demonstrating the "Insured

24  Contract" exception to the exclusion.  *See,* Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha,

25  126 Wash. 2d 50, 91 (1994) (Even if an exclusion applies, the next step is to determine whether

26  "[c]overage is re-triggered . . . under [an] exception to the exclusion.")  Notwithstanding OCIC's

27  wholly inadequate discovery responses fail to provide any evidence that would create a triable issue

28

1  of fact as to whether the contract between ICON and D&R is an "insured contract[,]" the evidence

2  clearly and affirmatively establishes that it is.  (*See,* Newman Decl. ¶¶ 4, 5, Ex. A at 5:1-3, Ex. B at

3  1:17.)

4        The "Contractual Liability" exclusion provides that it "does not apply to liability for damages:

5  Assumed in a contract or agreement that is an 'insured contract', provided the . . . 'property damage'

6  occurs subsequent to the execution of the contract or agreement. . . ."

7  (Dkt. # 1-2 at 81.)

8        The definition of "insured contract" is, in relevant part:

9        That part of any other contract or agreement pertaining to your business . . under which
          you assume the tort liability of another party to pay for . . . "property damage" to a third
10       person or organization, provided the . . . "property damage" is caused, in whole or in
          part, by you or by those acting on your behalf.  However, such part of a contract or
11       agreement shall only be considered an "insured contract" to the extent your assumption
          of the tort liability is permitted by law.  Tort liability means a liability that would be
12       imposed by law in the absence of any contract or agreement.

13  (Dkt. # 1-2 at 115.)

14       The contract between ICON and D&R is dated May 30, 2018.  (Newman Decl., ¶¶ 4, 5, Ex. A

15  at 5:1-3, Ex. B at 1:17.)  D&R caused "property damage" – i.e., placed asphalt millings on Vashon

16  Island – after the contract was executed.  (Watkins Decl., ¶ 4 at 726:24-727:15; Newman Decl. ¶ F at

17  7:1-8:19.)

18       As the trial court found in its March 19, 2021, Order on ICON's Motion for Partial Summary

19  Judgment re Breach of Contract Liability and Indemnification:

20       The Subcontract [between ICON and D&R] contains indemnification provisions under
          which D&R agreed to defend, indemnify and hold ICON harmless against all claims
21       arising from or relating in any manner directly or indirectly from or connected with
          D&R's work and that in the event the Owner or ICON deem D&R's work improper
22       and D&R fails to remedy the improper work, D&R is liable for and shall pay ICON for
          all costs, damages, losses, attorneys' fees, etc. incurred by ICON as a result.

23

24  (Dkt. # 1-4 at 4, ¶ 10.)

25

26

27

28

MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY
JUDGMENT; AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4                                    21          CASE NO:  2:22-cv-00137
                                                          Sullivan Hill Rez & Engel, APLC
                                                          600 B Street, Suite 1700
                                                          San Diego, CA 92101  (619) 233-4100

1
2
3
4

As a matter of law, the trial court concluded that:

> D&R's work under the Subcontract encompasses the allegations raised by King County during the Project and in King County's Complaint against ICON for breach of contract, requiring D&R defend, indemnify, and hold ICON harmless pursuant to the Subcontract's indemnification provisions.

5   (Dkt. # 1-4 at 6, ¶ 9.)

6   Thus, the trial court entered judgment on ICON's Motion for Partial Summary Judgment, in

7   relevant part, as follows:

8
9

> D&R is contractually required to indemnify, defend, and hold harmless ICON against the King County claims and directives related to D&R's work, including but not limited to D&R's failure to remove the millings as directed by King County and ICON . . . .

10   (Dkt. # 1-4 at 7, ¶ 4.)

11   As noted elsewhere herein OCIC's discovery responses and pleadings do not disclose or

12   explain the basis for its contention that the ICON/D&R subcontract does not meet the definition of an

13   insured contract.  (*See, e.g.,* Newman Decl. ¶ 8, 10, Ex. E at 23:23-24:15, Ex. G at 10:6-15:1.)  D&R's

14   conduct of placing millings on properties on Vashon Island was tortious in that it caused injury – i.e.,

15   the millings *had to be removed*.  D&R was in fact found to have committed a public nuisance per se –

16   a tort.  (Dkt. # 1-7 at 3:17-19.)

17   There can therefore be no triable issue of fact that the contract between D&R and ICON was

18   anything other than an "insured contract" as defined by OCIC.

19                                            **IV.**

20                                    **CONCLUSION**

21   For all of the foregoing reasons ICON is entitled to judgment as a matter of law as to OCIC's

22   entire Complaint.  ICON asks the Court to enter judgment in favor of ICON against OCIC, and issue

23   a declaration that the judgment rendered against D&R in the principal amount of $683,764.81 along

24   with pre-judgment interests of $301,231.80 and post-judgment interest accruing at a rate of 18% per

25   annum from December 15, 2021 through the date the judgment is ultimately satisfied, is covered under

26   both the OCIC Primary Policy and the Umbrella Policy.

27
28

MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
#5517966v4

22

CASE NO:  2:22-cv-00137
Sullivan Hill Rez & Engel, APLC
600 B Street, Suite 1700
San Diego, CA 92101  (619) 233-4100

1    In the alternative, ICON asks the Court to grant partial summary judgment on the issue of

2  OCIC's duty to indemnify D&R from and against some or all of the judgment against it in the

3  Underlying Litigation, and issue a declaration that OCIC must indemnify D&R for the judgment

4  rendered against it in the Underlying Litigation in an amount to be determined by later proceedings

5  before this Court, including, if necessary, trial on that issue.

6              **<u>LOCAL CIVIL RULE 7(e)(6) ATTESTATION</u>**

7    The undersigned counsel certifies that the foregoing memorandum of points and authorities

8  contains no more than 8,400 words excluding the caption, tables of contents, tables of authorities, this

9  attestation, and the signature block below in compliance with Local Civil Rule 7(e)(4).

10

11   Dated:  7/25/2023                SULLIVAN HILL REZ & ENGEL
                                      A Professional Law Corporation

12

13                                   By:   */s/ Yaniv Newman*_____
                                           Timothy C. Earl, WSBA # 56450
14                                         Email: earl@sullivanhill.com
                                           Yaniv Newman, WSBA #56467
15                                         Email: newman@sullivanhill.com
                                           Counsel For Defendant and Cross-Claimant
16                                         CPM DEVELOPMENT CORP. dba ICON
                                           MATERIALS
17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                    **THE HONORABLE JAMAL N. WHITEHEAD**

3

4

5

6

7                              **UNITED STATES DISTRICT COURT**

8                            **WESTERN DISTRICT OF WASHINGTON**

9                                          **SEATTLE**

10   THE OHIO CASUALTY INSURANCE           )   Case No.: 2:22-cv-00137
     COMPANY,                              )
11                                         )
                                           )   **CERTIFICATE OF SERVICE**
12                  Plaintiff,             )
                                           )
13   v.                                    )
                                           )
14   D & R EXCAVATING, INC., a Washington  )
     corporation; DOUGLAS D. HOFFMAN and   )
15   SUSAN K. HOFFMAN, and the marital     )
     community composed thereof; and CPM   )
16   DEVELOPMENT CORP. dba ICON            )
     MATERIALS, a Washington corporation,  )
17   and KING COUNTY, a political subdivision )
     of the State of Washington,           )
18                                         )
                                           )
19                  Defendants.            )
                                           )
20   _____ )
                                           )
21   AND RELATED CROSS-ACTIONS             )
                                           )
22          IT IS HEREBY CERTIFIED THAT:

23          I, Morgan A. Suárez, am a citizen of the United States and am at least eighteen years of

24   age.  My business address is 600 B Street, Suite 1700, San Diego, California 92101.  My

25   electronic notification address is *suarez@sullivanhill.com*.

26

27

28

---

**CERTIFICATE OF SERVICE**                    1          **CASE NO:  2:22-cv-00137**
                                                         **Sullivan Hill Rez & Engel, APLC**
                                                         **600 B Street, Suite 1700**
                                                         **San Diego, CA 92101   (619) 233-4100**

I am not a party to the above-entitled action.  I hereby certify that on July 25, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following service list:

1.  CPM DEVELOPMENT CORP. DBA ICON MATERIALS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

2.  DECLARATION OF YANIV NEWMAN, ESQ. IN SUPPORT OF CPM DEVELOPMENT CORP. DBA ICON MATERIALS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

3.  DECLARATION OF LINDSAY WATKINS, ESQ. IN SUPPORT OF CPM DEVELOPMENT CORP. DBA ICON MATERIALS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

4.  [PROPOSED] ORDER GRANTING CPM DEVELOPMENT CORP. DBA ICON MATERIALS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2023.

/s/ Morgan A. Suarez
Morgan A. Suárez

1

**SERVICE LIST-**

2

| | |
|---|---|
| Michael A Guadagno<br>Jared F. Kiess<br>BULLIVANT HOUSER BAILEY (SEA)<br>925 FOURTH AVE STE 3800<br>SEATTLE, WA 98104-1157<br>michael.guadagno@bullivant.com<br>jared.kiess@bullivant.com | *Attorneys for Plaintiff*<br><br>*THE OHIO CASUALTY INSURANCE COMPANY* |
| Lawrence Ballis Linville<br>LINVILLE LAW FIRM<br>800 FIFTH AVE<br>STE 3850<br>SEATTLE, WA 98104<br>llinville@linvillelawfirm.com | *Attorneys for Defendant/Cross-Complainant*<br><br>D&R EXCAVATING, INC.<br><br>*Attorneys for Defendants*<br><br>DOUGLAS D HOFFMAN and SUSAN K HOFFMAN |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28